# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-KA-01374-SCT

*JEFF DOUGLAS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/93 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALLAN D. SHACKELFORD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY | |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

Jeff Douglas ("Douglas") was convicted in Quitman County Circuit Court of sexual battery. He was sentenced to twenty years in the Mississippi Department of Corrections with five years suspended.

A jury convicted Douglas for the sexual battery of Angela Jones, the daughter of his former wife and sister of his son, Marquis Douglas. On August 8, 1992, Douglas gave Marquis, Angela, and two of their cousins a ride home from their aunt's house. Marquis and Angela both testified that when he let the children out, he grabbed Angela by the arm and held her in the car, driving off with her. Angela testified that Douglas drove into the country and parked the car; Douglas then tried to have sex with her. She fought him off to some extent, and he told her to perform oral sex. She complied because she was scared of Douglas. Douglas drove Angela back to town and let her out at the post office.

Angela ran home and told her brother what had happened. Angela's mother subsequently took her to the sheriff's department and then to see Dr. Petilos. The doctor testified that there was no vaginal bruising or other physical evidence of intercourse. He further testified that he could not substantiate her complaint concerning the oral sex.

Other evidence at trial included eyewitness James Jones, who saw Douglas's car on the road where Angela said he took her that night. Seven members of Douglas's family testified that Douglas was getting a haircut by his brother-in-law when the alleged act was going on. Douglas took the stand in his defense and stated that he let Angela out when he let the other children out and did not see her again that night.

Douglas assigns three errors for the Court's review. He asserts that the jury's verdict was against the weight of the evidence. Specifically, he claims that the only evidence against him -- the testimony of the fourteen-year-old victim -- was uncorroborated. He also contends that the jury's lack of males, particularly black males, violated his constitutional rights to equal protection and trial by jury. He further claims that the sentence for the crime was too harsh.

## A N A L Y S I S

Douglas claims that his conviction is based solely on the testimony of Angela, because no one else saw the alleged event and there was no physical evidence of the event. He asserts that this conviction is against the overwhelming weight of the evidence based on the fact that Angela's testimony of the events was so inconsistent and contradictory as to render her unbelievable.

Douglas points to testimony by Angela in which she said that after the incident Douglas offered her five dollars. However, immediately after the incident, she told her mother Douglas had offered her five hundred dollars not to tell.

Douglas also directs the Court's attention to testimony in which Angela stated that Douglas stopped at a trailer home. The man he spoke to in the trailer testified that it looked like somebody was in the car, but he could not swear to that.

In *Killingsworth v. State*, 374 So. 2d 221, 223 (Miss. 1979), the Court stated that the unsupported word of a prosecutrix must be scrutinized with caution. *Killingsworth* involved the rape of an adult by an acquaintance and the issue was consent. The Court found that both versions of the night's events were plausible. The conviction was affirmed based on the longstanding principle that resolving a conflict in the testimony of the witnesses was the job of the jury. *Id.* at 223; *see also Billiot v. State*, 454 So. 2d 445, 463 (Miss. 1984). Further, the Court has held that in the case of rape, the victim's uncorroborated testimony alone is sufficient where it is consistent with the circumstances. *Allman v. State*, 571 So. 2d 244, 250 (Miss. 1990).

There were no eyewitnesses to the actual crime. However, Angela's testimony -- that Douglas held her in the car after letting the others out -- was corroborated by Marquis Douglas, the defendant's own son. Douglas's story -- that he let all the children out at one time -- is the uncorroborated one. Additionally, Angela's mother and aunt testified to her emotional condition that night. The record provides substantial and believable evidence supporting the jury's verdict notwithstanding the conflicting testimony of Angela and Douglas as to the actual incident.

When the venire was called for the present case, only seven men were included in the first thirty prospective jurors called. The defense moved to quash the panel as not being a "fair representation" from both sexes. Douglas argues that the jury as drawn had a limited number of males, especially black males, resulting in none being on the jury. Douglas contends that, even though the jury was randomly drawn in accordance with the law, the resulting proportion constituted a prima facie of unconstitutionality.

Douglas has not shown that his right to a fair cross-section of the community on the venire was violated. This Court has previously delineated the elements that must be shown for a prima facie violation of the fair cross-sectional requirement for an impartial jury in as:

> 1. the group alleged to be excluded is a "distinctive" group in the community;

> 2. the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

> 3. this under representation is due to systematic exclusion of the group in the jury-selection process.

*Lanier v. State*, 533 So. 2d 473, 477 (Miss. 1988) (quoting *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 658, 58 L.Ed.2d 579, 587 (1979)); *Simon v. State*, 633 So. 2d 407, 412 (Miss. 1993). Douglas does not offer any evidence to show that the venire did not reflect a fair cross-section of the population of Quitman County. In fact, the circuit clerk testified that the venire was randomly drawn. Contrary to Douglas's argument, proportion of the venire alone does not constitute a prima facie case of unconstitutionality. This issue is without merit.

The trial court sentenced Douglas to twenty years with five years suspended in the Mississippi Department of Corrections. Douglas had no prior convictions. He asserts that the severity of the sentence far exceeds the circumstance of the alleged act.

The Court has held that the sentencing of a convicted criminal is within the discretion of the trial court. The Court will not review the sentence if it is within the limits prescribed by statute. *Reynolds v. State*, 585 So. 2d 753, 756 (Miss. 1991).

Miss. Code Annotated § 97-3-101 provides that every person convicted of sexual battery shall be imprisoned for a period of not more than thirty years. The sentence imposed on Douglas was within the limits prescribed by statute.

**CONVICTION OF SEXUAL BATTERY AND SENTENCE TO TWENTY (20) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FIVE (5) YEARS SUSPENDED AFTER THE APPELLANT HAS SERVED FIFTEEN (15) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**